FILED'10 MAR 01 14:11USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RAMIRO SALINAS, JAVIER CONCHAS,
JOSE CORONA, JUAN G. GOMEZ, ADAN
TORRES, LINO CAVARRUBIA, GABINO
GONZALES, ROLANDO CARDENA,
CORNELIO NAVA JIMENEZ, and JOSE
ALFREDO PENA AVALOS,
        Plaintiffs,

                                      CV-08-1514-PK

                                      FINDINGS AND
v.                                    RECOMMENDATION

BEEF NORTHWEST FEEDERS, LLC,
        Defendant.
_____

PAPAK, Magistrate Judge:

      Plaintiffs Ramiro Salinas, Javier Conchas, Jose Corona, Juan G. Gomez, Adan Torres,

Lino Cavarrubia, and Gabino Gonzales filed this action against defendant Beef Northwest

Feeders, LLC ("Beef Northwest"), on December 31, 2008. On March 26, 2009, plaintiffs

amended their complaint, adding Rolando Cardena, Cornelio Nava Jimenez, and Jose Alfredo

Page 1 - FINDINGS AND RECOMMENDATION

Pena Avalos as additional plaintiffs.  Plaintiffs' first amended complaint stated claims against

Beef Northwest for failure to pay overtime wages in violation of the federal Fair Labor Standards

Act, for failure to make timely payment of overtime wages in violation of O.R.S. 653.055, and

for retaliation in consequence of having sought unpaid overtime wages, in violation of O.R.S.

653.060 and 659A.885.  On December 9, 2009, the parties having reported their dispute settled,

the court issued a judgment dismissing plaintiffs' claims.

Now before the court is plaintiffs' motion (#43) for attorney fees.  I have heard oral

argument on behalf of the parties, and have considered the motion, the parties' briefs, and all of

the evidence in the record.  For the reasons set forth below, plaintiffs' motion should be granted

in part, and plaintiffs should be awarded attorney fees and costs in the total amount of

$65,037.36.

## BACKGROUND

Beef Northwest operates feedlots in Nyssa and in Boardman, Oregon, serving cattle

owned by Beef Northwest as well as cattle owned by third parties.  Beef Northwest mills corn

into cattle feed at both of its feedlot locations.  Plaintiffs in this action were Beef Northwest

employees who milled corn at the Nyssa and/or Boardman feedlots and who were classified as

exempt from Fair Labor Standards Act ("FLSA") and Oregon overtime requirements under the

FLSA agricultural employee exemption.

On June 3, 2008, the three plaintiffs (Salinas, Conchas, and Corona) employed by Beef

Northwest at its Nyssa, Oregon, feedlot location filed an action against their employer in state

court (the "Multnomah County action") for unpaid overtime wages, erroneously naming the

defendant as "Beef Northwest – Nyssa".  These plaintiffs alleged that, after their state action was

Page 2 - FINDINGS AND RECOMMENDATION

filed, Beef Northwest retaliated against them by adversely impacting the terms and conditions of their employment. These plaintiffs' erroneous surmise as to the defendant's corporate name was based on the way Beef Northwest identified itself on its own payroll stubs. When the plaintiffs in the Multnomah County action learned Beef Northwest's correct corporate name and that Beef Northwest did not do business in Multnomah County, they voluntarily dismissed their state court action.

This federal action was filed December 31, 2008. In this action, all plaintiffs brought an unpaid overtime wage claim under the FLSA and a waiting-time penalty claim under O.R.S. 653.055, and the Nyssa-based plaintiffs brought a claim for unlawful retaliation under O.R.S. 653.060 and 659A.885. The parties settled their dispute on December 9, 2009, with Beef Northwest agreeing to pay each plaintiff's unpaid overtime wages in full. In addition, Beef Northwest agreed to pay plaintiffs' reasonably incurred attorney fees. According to the terms of the settlement, plaintiffs received no payment reflecting waiting-time penalties and the Nyssa-based plaintiffs received no payment reflecting damages in connection with their retaliation claim.

## DISCUSSION

**I    Plaintiffs' Entitlement to Award of Attorney Fees**

Plaintiffs' entitlement to award of attorney fees is not in dispute. Both the Fair Labor Standards Act and Oregon law provide for mandatory award of attorney fees to prevailing plaintiffs in wage disputes. *See* 29 U.S.C. § 216(b); O.R.S. 652.200. Here, it is clear that, at a minimum, plaintiffs prevailed as to their claim for unpaid overtime wages, and are therefore entitled to award of at least some of their reasonably incurred attorney fees. Defendant Beef

Northwest concedes plaintiffs' entitlement to an award of at least some of its attorney fees, and challenges only the reasonableness of the amount plaintiffs claim.

## II    The Lodestar

Determination of a reasonable attorney's fee begins with the "lodestar," which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-64 (1986). Plaintiffs relied on the services of three attorneys in litigating the merits of this case, Mark E. Griffin ("M. E. Griffin"), James E. McCandlish, and R. Bradley Griffin ("R. B. Griffin"). In connection with merits litigation, plaintiffs request compensation for 92.1 hours of M. E. Griffin's time at a rate of $400 per hour, or $36,840.00, 96.9 hours of McCandlish's time at a rate of $400 per hour, or $38,760.00, and 7.7 hours of R. B. Griffin's time at a rate of $250 per hour, or $1,925. Also in connection with merits litigation, plaintiffs request compensation for 10.45 hours of paralegal Theresa N. Prescott's time at an hourly rate of $125, or $1,306.25, and 8.0 hours of an unidentified paralegal's time at an hourly rate of $75, or $600.00. Plaintiffs thus seek $79,431.25 in attorney and paralegal fees incurred in connection with litigating the merits of this action.

In addition to the foregoing, in connection with litigating this fee dispute plaintiffs at this time request compensation for 24.1 hours of M. E. Griffin's time at a rate of $400 per hour, or $9,640.00, 6.55 hours of McCandlish's time at a rate of $400 per hour, or $2,620.00, and 4.1 hours of paralegal Theresa N. Prescott's time at an hourly rate of $125, or $512.50. Plaintiffs therefore currently seek a total of $12,772.50 in attorney and paralegal fees incurred in connection with litigating this fee dispute. Plaintiffs also express their intent to file a

supplemental petition for additional "fees on fees" incurred in connection with litigating their fee petition.

### A.    Hours Reasonably Expended

Beef Northwest challenges the reasonableness of the hours claimed by plaintiffs' counsel. Specifically, Beef Northwest argues, without significant particularity, that plaintiffs should not receive compensation for time spent by their counsel in connection with claims as to which plaintiffs were unsuccessful or in connection with tasks unrelated to the litigation of plaintiffs' successful claims, and that plaintiffs' fee award should be reduced due to allegedly excessive expenditures of time and alleged discrepancies in plaintiffs' counsel's billing records.  In addition to Beef Northwest's articulated objections, the court is obliged to scrutinize plaintiffs' fee petition independently to determine its reasonableness.  *See, e.g., Gates v. Deukmejian*, 987 F.2d 1392, 1400-1401 (9th Cir. 1992).

It is the fee claimant's burden to demonstrate that the number of hours spent was "reasonably necessary" to the litigation and that counsel made "a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) ("plaintiffs bear the burden of showing the time spent and that it was reasonably necessary to the successful prosecution of their . . . claims); *Chalmers v. Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986) (district court determines numbers of hours reasonably expended in furtherance of the successful aspects of a litigation).  Moreover, it is likewise the fee claimant's burden to "submit evidence supporting the hours worked . . . .  Where the documentation of hours is inadequate, the district court may reduce the award accordingly."

*Hensley*, 461 U.S. at 433; *see also, e.g., Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945-946 (9th Cir. 2007) (same).

For the reasons set forth below, I find that the evidence submitted by the parties supports an award of compensation for 74.9 hours of M. E. Griffin's time, 94.5 hours of McCandlish's time, 7.7 hours of R. B. Griffin's time, and no paralegal time expended in connection with litigating the merits of this action, and 24.1 hours of M. E. Griffin's time, 6.35 hours of McCandlish's time, and 2.0 hours of paralegal Prescott's time expended in connection with litigating this fee dispute to date.

### 1.    Hours Expended in Litigation of the Merits

#### a.    Successful versus Unsuccessful Claims

Reasonable hours include only those expended in furtherance of successful claims, or of claims closely related to successful claims. *See Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994). Claims are closely related for fee-shifting purposes if they "involve a common core of facts *or* are based on related legal theories." *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003) (emphasis original). Here, plaintiffs seek attorney fees for time expended in connection with the state-law claims in this action and in connection with proceedings in the Multnomah County action, although they did not receive settlement funds corresponding to the damages sought in connection with their state-law claims and did not receive any settlement in connection with proceedings in the Multnomah County action.

It is undisputed that plaintiffs were successful in connection with their Fair Labor Standards Act claim. The FLSA claim was factually premised on Beef Northwest's failure to pay plaintiffs overtime wages that they were allegedly due. Although plaintiffs' state-law claims for

waiting-time penalties and for retaliation differ from the FLSA claim in terms of their statutory underpinnings and in terms of the relief sought, each is premised in significant part on precisely the same facts as the FLSA claim. Specifically, the claim for waiting-time penalties was premised on Beef Northwest's failure to pay plaintiffs overtime wages on a timely basis, along with the additional factual elements that plaintiffs made a demand for payment of the unpaid wages and that Beef Northwest failed to make timely payment following such demand. The claim for retaliation was likewise premised on Beef Northwest's failure to pay plaintiffs overtime wages on a timely basis, along with the additional factual elements that the Nyssa-based plaintiffs complained about the nonpayment and that Beef Northwest adversely modified the terms and conditions of those plaintiffs' employment in response. Because both state-law claims involved a common core of fact with the successful FLSA claim – namely, Beef Northwest's failure to pay overtime wages when due – those claims plaintiffs are closely related to the FLSA claim as to which plaintiffs were clearly successful, and plaintiffs are entitled to fees in connection with those claims. *See Webb*, 330 F.3d at 1168.

By contrast, plaintiffs have not met their burden to show that they are entitled to fees in connection with proceedings in the Multnomah County action. First, plaintiffs provide no authority in support of the proposition that this court may award fees or costs incurred in connection with a separate state-court action. Second, plaintiffs have not shown that the proceedings in the Multnomah County action were reasonably necessary for the litigation of their claims, where plaintiffs did not ascertain whether Beef Northwest – under whatever corporate name – did business in Multnomah County before filing a state-court action there. Indeed, it appears from the evidentiary record that there may have been considerable delay between the

date plaintiffs first learned facts sufficient to establish that venue was inappropriate in the

Multnomah County Circuit Court and the date plaintiffs voluntarily dismissed their claims in that

action. Because plaintiffs have not shown either that proceedings in the Multnomah County

action were reasonably necessary for the litigation of their overtime claim, and because plaintiffs

have not shown that this court has authority to award fees in connection with a separate state

court action, the following time entries should be excluded from the lodestar calculation: M. E.

Griffin's second entry from May 30, 2008, first and third entries from June 2, 2008, first entry

from June 3, 2008, entry for June 11, 2008, entry for July 9, 2008, entries from July 24 through

July 29, 2008, first entry from September 2, 2008, first entry from July 29, 2008, entry for

October 6, 2008, entry for October 20, 2008, and first entry from October 24, 2008, totaling 5.6

hours of M. E. Griffin's time; that portion of McCandlish's first entry from May 30, 2008,

reflecting time spent reviewing M. E. Griffin's draft state-court complaint and McCandlish's time

entry for June 2, 2008, totaling 0.4 hours of McCandlish's time; and paralegal Prescott's entry for

June 2, 2008, and second entry from October 10, 2008, totaling 1.6 hours of Prescott's time.

### b.    Clerical or Administrative Tasks

Costs associated with clerical tasks are typically considered overhead expenses reflected

in an attorney's hourly billing rate, and are not properly reimbursable. *See Missouri v. Jenkins*,

491 U.S. 274, 288 n.10 (1989) ("purely clerical or secretarial tasks should not be billed at a

paralegal [or lawyer's] rate, regardless of who performs them . . . [the] dollar value [of a clerical

task] is not enhanced just because a lawyer does it") (citation omitted). Time entries reflecting

the performance of clerical tasks should therefore be deducted from the totals listed in the fee

petition. *See Frevach Land Co. v. Multnomah County*, No. CV-99-1295-HU, 2001 US Dist

Page 8 - FINDINGS AND RECOMMENDATION

LEXIS 22255, *37 (D. Or. December 18, 2001) (inappropriate according to practices "prevailing

. . . in this community [*i.e.*, Multnomah County] to bill a client, or to seek fees under a

fee-shifting statute, for purely secretarial tasks").

Scrutiny of the time records submitted in support of plaintiffs' fee petition establishes that

plaintiffs' attorneys have not recorded any time expended in purely clerical tasks. However, a

majority of paralegal Prescott's time entries reflect time spent engaged in clearly clerical or

secretarial work, as, for example, "Open file; organize dox" from June 17, 2008, "Update &

organize file," recorded on fifteen separate occasions, and "Copies" from July 1, 2008. Because

time spent in purely clerical tasks, by whomever performed, is properly excluded from the

lodestar calculation, *see Missouri*, 491 U.S. at 288 n.10, each of Prescott's time entries from June

17 through the first entry for November 10, 2008, from November 11, 2008, through March 4,

2009, from March 12 through April 29, 2009, for May 5, 2009 (second entry for that date), from

June 8 through June 10, 2009, and from July 7 through July 15, 2009, totaling 7.4 hours, should

be excluded from the lodestar calculation.

### c.    Inadequately Specified Tasks

Because it is the fee petitioner's burden to demonstrate that the compensation sought is

for hours reasonably related to the litigation of successful claims and claims closely related to

successful claims, *see, e.g., Frank Music*, 886 F.2d at 1557, failure to specify the subject of work

performed results in the exclusion from the lodestar calculation of any time spent in tasks whose

relatedness to such claims cannot be determined from the supporting time entries, *see, e.g.,*

*Frevach*, 2001 US Dist LEXIS 22255 at *45. Scrutiny of the time records submitted in support

of plaintiffs' fee petition reveals a relatively small number of such inadequately specified tasks in

M. E. Griffin's time entries, as, for example, "tf Ramiro Salinas" from May 27, 2008, or "em

furnaz" from September 26, 2008, in McCandlish's time entries, as, for example, "Meet with

clients" from April 1, 2009, or "Tel call from Adam Torres" from July 17, 2009, in paralegal

Prescott's time entries, as, for example, "join" from March 11, 2009, or "KOK" from May 5,

2009, and in the unidentified paralegal's time entries, as "Documents" from July 13, 2009.

Because it is impossible to determine from the evidence in the record whether these time

expenditures were reasonably necessary, the following time entries should be excluded from the

lodestar calculation:  M. E. Griffin's third time entry from May 27, 2008, first time entry from

May 29, 2008, second time entry from September 26, 2008, entry for January 22, 2009, and first

time entry from March 5, 2009, totaling 1.0 hours of M. E. Griffin's time; McCandlish's fifth

time entry from May 30, 2008, second time entry from April 1, 2009, and second time entry from

July 17, 2009, totaling 1.2 hours of McCandlish's time; Prescott's two time entries from June 3,

2008, time entry for March 11, 2009, first time entry from May 5, 2009, time entry for June 3,

2009, entry for June 30, 2009, and entry for July 21, 2009, totaling 1.45 hours of Prescott's time;

and the unidentified paralegal's time entry for July 13, 2009, totaling 8.0 hours of the unidentified

paralegal's time.

### d.    Redundant or Duplicative Expenditures of Time

The courts of this district routinely exclude from the lodestar calculation any time entries

indicating that more than one lawyer performed the same task. *See, e.g.*, *Taylor v. Albina Cmty.*

*Bank*, No. CV-00-1089-ST, 2002 US Dist LEXIS 25580, *11-12 (D. Or. October 2, 2002).

Specifically, the courts of this district have held that:

> A party is certainly free to hire and pay as many lawyers as it wishes, but cannot
> expect to shift the cost of any redundancies to its opponent.  Instead it can only

> shift the reasonable attorney fee expended.  A fee that is "not excessive" may still
> be unreasonable.  When attorneys hold a telephone or personal conference, good
> "billing judgment" mandates that only one attorney should bill that conference to
> the client, not both attorneys.  The same good "billing judgment" requires
> attorneys not to bill for more than two attorneys to review pleadings or to attend
> oral argument.

*Nat'l Warranty Ins. Co. v. Greenfield,* No. CV-97-1654-ST, 2001 US Dist LEXIS 7763, *14 (D.

Or. Feb. 8, 2001).  Scrutiny of the time records submitted in support of plaintiffs' fee petition

reveals a small number of such duplicitous expenditures of time, as for example, conferences

and/or telephone calls between M. E. Griffin and McCandlish on November 10, 11, and 19,

2008.  Because it is always inappropriate to tax an opposing party with such duplicative

expenditures of time, the following time entries should be excluded from the lodestar calculation:

M. E. Griffin's second time entry for November 10, 2008, third time entry for November 11,

2008, first time entry for November 19, 2009, and second time entry for March 3, 2009, totaling

0.8 hours of M. E. Griffin's time; and McCandlish's third time entry for May 27, 2008, third time

entry for May 28, 2008, second time entry for June 3, 2008, first time entry for September 26,

2008, first time entry for October 24, 2008, first time entry for November 20, 2008, first time

entry for November 21, 2008, and second time entry for December 4, 2008, totaling 0.8 hours of

McCandlish's time.

### e.    Excessive Time Expenditure

I am also required to scrutinize plaintiffs' fee petition "to [e]nsure that the time expended

[in furtherance of each task performed] was not excessive to the task. . . ." *Taylor,* 2002 US Dist

LEXIS 25580, *8; *see also id.* at *16 ("A party is certainly free to pay its lawyers whatever it

wishes, but cannot expect to shift the cost of any . . . excesses to its opponent.  Instead it can only

shift the reasonable attorney fee expended").  Beef Northwest argues forcefully that plaintiffs'

Page 11 - FINDINGS AND RECOMMENDATION

counsel expended significant unnecessary time in connection with litigating the merits of this action, in particular by making unnecessary trips to Nyssa and to Boardman and by conducting superfluous legal research.

I am unpersuaded that plaintiffs' counsel could as easily have obtained the information they needed to prosecute their clients' claims through long-distance telephone conferencing as by visiting plaintiffs' worksites and meeting with plaintiffs in person. In particular where, as here, communications must of necessity be through an interpreter, telephonic communications are simply no substitute for face-to-face contact. Counsel's diligence in ensuring first-hand evaluations of witness credibility and in ensuring the maximum effectiveness of information gathering was reasonably necessary to the litigation of plaintiffs' claims.

Similarly, I reject Beef Northwest's argument that plaintiffs' counsel could have relied on legal research already performed in connection with other actions in preparing plaintiffs' case in this action. Indeed, an attorney who relied on previously performed research without taking steps to ensure that no intervening changes in the law had taken place, or to refresh him- or herself as to the relevant legal principals, would be at significant risk of committing malpractice. Plaintiffs' counsel are not to be faulted for exercising basic diligence in representing their clients.

However, I agree with Beef Northwest that the time plaintiffs' counsel expended in connection with researching the "*de minimis* defense" was excessive to the task of litigating plaintiffs' claims. Although plaintiffs' counsel spent a significant amount of time researching this defense, defendants never raised the defense and it was never at issue in this litigation. In consequence, the time spent in connection with researching the *de minimis* defense was not reasonably necessary to litigating plaintiffs' claims. Because it would be inappropriate to task

Beef Northwest with fees incurred in connection with researching the *de minimis* defense, the following time entries, totaling 9.8 hours of M. E. Griffin's time, should be excluded from the lodestar calculation: the entries for April 6 and 7, 2008, the second and third entries from April 8, 2008, and the entry for April 9, 2008.

f.    <strong>Alleged "Discrepancies" in Plaintiffs' Counsel's Time Records</strong>

Beef Northwest argues that plaintiffs' attorney fee award should be reduced in some degree because of purported inconsistencies among the various versions of the time records plaintiffs provided to defense counsel in the course of negotiating this fee dispute. Specifically, it appears that plaintiffs' counsel provided defense counsel with three different sets of time records in support of their claim to attorney fees, the second and third each adding whole categories of time expenditures omitted from the preceding set. However, while troubling, scrutiny of the time records provided to the court suggests that all such inconsistencies were the result of disorganization rather than of deliberate chicanery, and do not call into question the accuracy of the records ultimately submitted to the court in support of the fee petition. I do not find that any reduction in plaintiffs' fee award is warranted on the basis of any such discrepancies or inconsistencies.

<strong>2.    Hours Expended in Litigation of the Fee Dispute</strong>

<strong>a.    Clerical or Administrative Tasks</strong>

As noted above, the Supreme Court has held that costs associated with clerical tasks – by whomever performed – are typically considered overhead expenses reflected in an attorney's hourly billing rate, and are not properly reimbursable. *See Missouri*, 491 U.S. at 288 n.10; *see also Frevach*, 2001 US Dist LEXIS 22255 at *36-38. Here, scrutiny of the time records

submitted in support of plaintiffs' fee petition establishes that the majority of paralegal Prescott's time expended in connection with litigating this fee dispute to date was expended in the performance of purely clerical tasks, as, for example, "update & organize file" from August 12, 2009. Because time spent in purely clerical tasks, by whomever performed, is properly excluded from the lodestar calculation, each of Prescott's time entries for August 12, 2009, from August 19 through September 1, 2009, and from September 16 through October 5, 2009, totaling 2.1 hours, should be disallowed.

### b.    Inadequately Specified Tasks

As noted above, because it is a fee petitioner's burden to demonstrate that the compensation sought is for hours reasonably related to the litigation of successful claims and claims closely related to successful claims, *see, e.g., Frank Music*, 886 F.2d at 1557, failure to specify the subject of work performed results in the exclusion from the lodestar calculation of any time spent in tasks whose relatedness to such claims cannot be determined from the supporting time entries, *see, e.g., Frevach*, 2001 US Dist LEXIS 22255 at *45. Here, scrutiny of the time records submitted in support of plaintiffs' fee petition reveals two such inadequately specified tasks within McCandlish's records of time spent in connection with litigating this fee dispute, specifically, "Tel call from Javier Conchas" from July 24, 2009, and "Tel call from Ramiro Salinas" from July 29, 2009. Because it is impossible to determine from the evidence in the record whether these time expenditures were reasonably necessary to the litigation of the fee dispute, both time entries should be excluded from the lodestar calculation. The excluded time entries total 0.2 hours.

**B.     Reasonable Rate**

It is well settled within the Ninth Circuit and in this District that:

> The prevailing market rate in the community is indicative of a reasonable hourly
> rate. . . .  The fee applicant has the burden of producing satisfactory evidence, in
> addition to the affidavits of its counsel, that the requested rates are in line with
> those prevailing in the community for similar services of lawyers of reasonably
> comparable skill and reputation.

*Jordan v. Multnomah County*, 815 F.2d 1258, 1262-1263 (9th Cir. 1987), *citing Blum v. Stenson*,

465 U.S. 886, 895-897, 895 n. 11 (U.S. 1984).

Plaintiffs request that M. E. Griffin's and McCandlish's time be compensated at an hourly

rate of $400, that R. B. Griffin's time be compensated at an hourly rate of $250, and that

paralegal Prescott's time be compensated at a rate of $125.

**1.     Rates for Attorneys M. E. Griffin and McCandlish**

In a sworn affidavit, M. E. Griffin provides evidence that he has 33 years' experience as a

litigator, having received an LL.B. degree from Lewis & Clark and joined the Oregon State Bar

in 1976.  According to his own testimony, M. E. Griffin has extensive experience in litigating

employment and complex business actions.  Both M. E. Griffin and, in a sworn affidavit, Judy

Danielle Snyder opine that an hourly rate of $400 is in line with community standards for an

attorney of M. E. Griffin's experience.

McCandlish also provides a sworn affidavit attesting to his credentials.  McCandlish has

34 years' experience as an Oregon attorney, having received an LL.B. degree from Lewis & Clark

and joined the Oregon State Bar in 1975.  McCandlish has extensive experience as a trial lawyer,

and has exclusively practiced civil litigation since 1981.  McCandlish, M. E. Griffin, and Snyder

all opine that an hourly rate of $400 is in line with community standards for an attorney of

McCandlish's experience.

Beef Northwest provides the court with a copy of the Oregon State Bar 2007 Economic Survey as evidence of prevalent community rates, and provides no other evidence as to whether the requested $400 rate is out of line with community standards for either M. E. Griffin or McCandlish.

According to the 2007 Economic Survey, which provides useful information as to rates actually charged by Oregon attorneys in 2006, the median hourly rate for legal services charged by Portland-area attorneys with over 30 years' experience was $300 in 2006, with a 25th percentile rate of $239, a 75th percentile rate of $350, and a 95th percentile rate of $461. An appropriate method for adjusting the foregoing rates for inflation in order to estimate the corresponding rates prevalent in the Portland legal community in 2008 and 2009, when this action was litigated, is to multiply the 2006 rates times the consumer price index for urban consumers ("CPI-U") for the years in which the fees were incurred, then dividing the resulting quotients by the CPI-U for 2006. I take judicial notice that the United States Department of Labor's Bureau of Labor Statistics has published a CPI-U for the Western states of 205.7 for 2006, 219.646 for 2008, and 218.822 for 2009. On this method, the estimated median hourly rate for legal services charged by Portland-area attorneys with over 30 years' experience in 2008 would therefore be $320.34, with an estimated 25th percentile rate of $255.20, an estimated 75th percentile rate of $373.73, and an estimated 95th percentile rate of $492.25, and the estimated median hourly rate for legal services charged by Portland-area attorneys with over 30 years' experience in 2009 would be $319.14, with an estimated 25th percentile rate of $254.25, an estimated 75th percentile rate of $372.33, and an estimated 95th percentile rate of $490.41.

In light of all of the evidence in the record, I find that an hourly rate of $320 is reasonable for attorneys of M. E. Griffin's and McCandlish's experience and credentials. $320 is approximately the estimated median hourly rate charged by Portland-area attorneys in 2008 and 2009, and the record does not establish that M. E. Griffin's and McCandlish's extensive experience in litigating claims like plaintiffs' resulted in cognizable gains in efficiency that might merit a premium over the estimated median rate. Indeed, the extensive research that M. E. Griffin undertook of relatively straightforward legal issues, despite having recently successfully litigated a very similar matter, strongly suggests that such gains in efficiency, if any, were insignificant. The estimated median hourly rate is therefore the appropriate hourly rate to apply in calculating these attorneys' fees.

### 2.    Rate for Attorney R. B. Griffin

In a sworn affidavit, M. E. Griffin provides evidence that R. B. Griffin had three years' experience as an attorney in 2008, and four years' experience in 2009, having received a J.D. degree from Washington University and joined the Missouri State Bar in 2005 (R. B. Griffin joined the Oregon State Bar in 2007). Both M. E. Griffin and, in a sworn affidavit, Judy Danielle Snyder opine that an hourly rate of $250 is in line with community standards for an attorney of R. B. Griffin's experience. Beef Northwest provides no evidence as to whether the requested rate is out of line with community standards, other than to provide the court with a copy of the Oregon State Bar 2007 Economic Survey.

According to the 2007 Economic Survey, the median hourly rate for legal services charged by Portland-area attorneys with zero to three years' experience was $180 in 2006, with a 25th percentile rate of $162, a 75th percentile rate of $190, and a 95th percentile rate of $216, and

the median rate for attorneys with four to six years' experience was $185 in 2006, with a 25th percentile rate of $170, a 75th percentile rate of $210, and a 95th percentile rate of $240. Using the method outlined above for adjusting the 2006 rates for inflation yields an estimated median hourly rate for an attorney with three years' experience of $192.20 for 2008, with a 25th percentile rate of $172.98, a 75th percentile rate of $202.88, and a 95th percentile rate of $230.64, and an estimated median hourly rate for an attorney with four years' experience of $196.80 for 2009, with a 25th percentile rate of $180.84, a 75th percentile rate of $223.40, and a 95th percentile rate of $255.31.

In light of all of the evidence in the record, I find that an hourly rate of $195 is reasonable for an attorney of R. B. Griffin's experience. This rate is between the estimated median rates for an attorney of R. B. Griffin's experience for 2008 and 2009, and no evidence in the record suggests that any upward or downward adjustment from this estimated figure would be appropriate.

### 3.    Rate for Paralegal Prescott

Plaintiffs request that Prescott's time be compensated at a rate of $125 per hour. The only evidence in the record offered by any party as to the reasonableness of this requested rate is the testimony of attorney Snyder, who opines that the requested rate is appropriate. Accordingly, I find that Prescott's time may reasonably be compensated at an hourly rate of $125.

### C.    Calculation and Adjustment of the Lodestar Figure

### 1.    Fees for Litigation

The product of the 74.9 hours reasonably expended by attorney M. E. Griffin in connection with litigating the merits of this action and his reasonable hourly rate of $320 is

$23,968, the product of the 94.5 hours reasonably expended by attorney McCandlish in connection with litigating the merits of this action and his reasonable hourly rate of $320 is $30,240, and the product of the 7.7 hours reasonably expended by attorney R. B.. Griffin in connection with litigating the merits of this action and his reasonable hourly rate of $195 is $1,501.50. Thus, the lodestar calculation results in a total of $55,709.50 in attorney fees reasonably incurred in connection with litigating the merits of this action.

### 2.    Fees-on-Fees

The product of the 24.1 hours reasonably expended by attorney M. E. Griffin in connection with litigating this fee dispute and his reasonable hourly rate of $320 is $7,712, the product of the 6.35 hours reasonably expended by attorney McCandlish in connection with litigating this fee dispute and his reasonable hourly rate of $320 is $2,032, and the product of the 2.0 hours reasonably expended by paralegal Prescott in connection with litigating this fee dispute and her reasonable hourly rate of $125 is $250. Thus, the lodestar calculation results in a total of $9,994 in attorney and paralegal fees reasonably incurred in connection with preparing plaintiffs' fee petition.

The Ninth Circuit has approved arithmetic reduction of an award of "fees-on-fees" by the ratio of the fees actually awarded in the underlying fee dispute to the amount therein requested. *See, e.g., Thompson v. Gomez,* 45 F.3d 1365, 1366-1368 (9th Cir. 1995). I see no reason to deviate from this reasonable procedure, and find that the lodestar figure for fees-on-fees should be reduced by the ratio of the lodestar figure calculated for merits litigation fees to the amount of fees requested in the Institute's fee petition. Here, plaintiffs requested $79,431.25 in total compensation for attorney and paralegal fees in connection with litigating the merits of this

action, whereas the lodestar calculation yields an appropriate award of $55,709.50, or approximately 70% of the amount requested. I find, therefore, that the lodestar figure for fees-on-fees should be reduced to $7,009.34.

### 3.    Adjustment

It is the fee claimant's burden to prove the reasonableness of the lodestar amount. *See Pennsylvania*, 478 U.S. at 563-64. The factors that may properly be considered in determining and evaluating the lodestar figure include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See, e.g., Kerr v. Screen Extras Guild*, 526 F.2d 67, 70 (9th Cir. 1975). Only those factors which are applicable need be addressed. *See, e.g., Sapper v. Lenco Blade, Inc.*, 704 F.2d 1069, 1073 (9th Cir. 1983).

It is within the discretion of this court to adjust the lodestar figure either: (1) downward if the plaintiff has achieved only partial or limited success or if the fee is otherwise unreasonable, *Hensley*, 461 U.S. at 435-36 (1983); or (2) upward in "rare" and "exceptional" cases, *Pennsylvania*, 478 U.S. at 565. The presumption, however, is that the lodestar figure represents a reasonable fee. *See Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 621 (9th Cir. 1987).

This case presented complex logistical issues for plaintiffs' counsel, but such complexity

does not warrant any upward adjustment of the lodestar figure, which already reflects the significant expenditure of time required to address such issues. The legal issues presented were relatively straightforward. I therefore do not find that any adjustment of the lodestar figure is warranted here. I recommend an award of attorney and paralegal fees in the lodestar amounts provided above, specifically $55,709.50 and $7,009.34, resulting in a total fee award of $62,718.84.

## II.    Costs

Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to an award of their costs incurred in litigating this action. *See* 29 U.S.C. § 216(b). Plaintiffs' claim a total of $2,834.85 in expenses it characterizes as compensable costs. Beef Northwest does not take issue with any of the claimed costs. However, scrutiny of the records submitted in support of the fee petition establishes that expenses totaling $516.33 were incurred strictly in connection with the Multnomah County action. For reasons discussed above, it would be inappropriate to tax Beef Northwest with these costs.

Scrutiny of the records establishes that all other costs claimed are reasonable. Plaintiffs should therefore be awarded their costs in the amount of $2,318.52.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion (#43) for attorney fees and costs should be granted, and Beef Northwest ordered to pay plaintiffs' attorney fees in the amount of $62,718.84, and costs in the amount of $2,318.52.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any,

are due fourteen (14) days from service of the Findings and Recommendation.  If no objections

are filed, then the Findings and Recommendation will go under advisement on that date.

    If objections are filed, then a response is due fourteen (14) days after being served with a

copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings

and Recommendation will go under advisement.


    Dated this 1st day of March, 2010.

                                        Honorable Paul Papak
                                        United States Magistrate Judge